UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD BARNWELL, et al.,            )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )      Case No. 4:22-cv-00285-SRC
                                     )
INTERNATIONAL BROTHERHOOD            )
OF ELECTRICAL WORKERS, et al.,       )
                                     )
            Defendants.              )

## Memorandum and Order

Plaintiffs Richard Barnwell and Robert Smith work as appliance technicians for Haier US

Appliance Solutions, Inc., doing business as G.E. Appliances.  They also belong to a labor union,

the International Brotherhood of Electrical Workers (Local 1).  They brought this "hybrid" action

against G.E. and Local 1, alleging (1) that G.E. breached a collective-bargaining agreement, and

(2) that Local 1 breached its duty of fair representation.  G.E. and Local 1 move separately for

summary judgment, arguing among others that the statute of limitations bars Plaintiffs' claims.

Docs. 30, 33.

## I.    Background

Plaintiffs have worked for G.E. as Appliance Repair Technicians since 2016.  Doc. 39 at

¶ 3; Doc. 41 at ¶ 12.  They also belong to the collective-bargaining unit of G.E. employees that

Defendant IBEW Local 1 represents.  Doc. 39 at ¶ 4; Doc. 41 at ¶ 8.  The collective-bargaining

agreement between G.E. and Local 1, and Letters of Understanding issued under that collective-

bargaining agreement, determine Plaintiffs' wage rate.  Doc. 39 at ¶¶ 5–7, 11–12; Doc. 41 at ¶¶

9, 16.  The collective-bargaining agreement sets out two tiers of wage rates:  the lower

"competitive" rate and the higher "legacy" rate.  Doc. 39 at ¶ 11; Doc. 41 at ¶ 11.  Employees

hired before a certain date qualify for the legacy rate.  Doc. 39 at ¶ 11; Doc. 41 at ¶ 11.  When
Plaintiffs began their employment in 2016, that date was July 31, 2012, so they received the
lower competitive wages.  Doc. 41 at ¶¶ 12–13.

In early 2021, agents for G.E. and Local 1 signed a Letter of Understanding that
purported to make employees hired before February 17, 2017, eligible for legacy wages—even
though, according to G.E. and Local 1, they never agreed to change the eligibility date.  Doc. 39
at ¶¶ 20–21, 23; Doc. 41 at ¶¶ 16–18.  Plaintiffs were hired in 2016, so when they continued
receiving the competitive rate, rather than the legacy rate, they decided to seek promotion to the
legacy rate on the theory that the new Letter of Understanding ("LOU") entitled them to it.  Doc.
39 at ¶ 22; Doc. 41 at ¶¶ 20, 22–23.  In July of 2021, Local 1's Shop Steward Frank Selvaggio
emailed G.E.'s agent, Tiana Chrisman, about Plaintiffs' complaint.  Doc. 39 at ¶ 22 (citing Doc.
35-13 at p. 1).  Selvaggio wrote, "I have talked to our business rep [Robert Dussold] at [Local 1]
and was told this [date] was a typo error and this was not a part of the negotiations therefore
there is nothing we can do about it.  The employees continue to want to pursue this though."
Doc. 35-13 at p. 1.

Selvaggio and Dussold then informed Plaintiffs that the 2017 date in the LOU was a
clerical error.  Doc. 39 at ¶ 23; Doc. 41 at ¶¶ 21, 23.  On August 11, 2021, Dussold told Plaintiffs
that he was "done" with them and that Local 1 would not pursue a grievance advancing their
claim for Legacy pay based on the LOU theory.  Doc. 39 at ¶ 23; Doc. 41 at ¶ 24.  Dussold never
filed a grievance advancing Plaintiffs' theory.  Doc. 41 at ¶¶ 31–32.

A couple weeks later, on August 24, Dussold did file a grievance—but it related to a
different issue.  Dussold claimed in that grievance that G.E. had violated the collective-
bargaining agreement by granting legacy pay to an employee, Tony Chetta, whom G.E. hired

after the 2012 eligibility date.  Doc. 39 at ¶ 24–26; Doc. 41 at ¶ 26.  The Union had bargained for

Chetta's transition to the Legacy rate in 2016 after a Legacy employee retired.  Doc. 39 at ¶ 25.

G.E. denied that grievance on September 10, 2021, and Local 1 decided not to advance the

grievance further.  Doc. 39 at ¶ 28; Doc. 41 at ¶¶ 29–33.  Plaintiffs filed this case on March 9,

2022, and Defendants Local 1 and G.E. now separately move for summary judgment.

## II.    Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for

summary judgment, identifying each claim or defense—or the part of each claim or defense—on

which summary judgment is sought."  Rule 56(a) also provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary

judgment, the Court must view the evidence in the light most favorable to the non-moving party

and give that party the benefit of all reasonable inferences to be drawn from the underlying facts.

*AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the

initial burden of showing both the absence of a genuine issue of material fact and entitlement to

judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R.

Civ. P. 56(a).

In response to the proponent's showing, the opponent must come forward with specific

facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c).  Self-serving, conclusory statements

without support will not suffice to defeat summary judgment.  *Armour & Co., Inc. v. Inver Grove

Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  The opponent must show a genuine issue of fact,

meaning a reasonable jury could return a verdict in its favor.  *Liberty Lobby*, 477 U.S. at 248.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

## III.    Discussion

### A.    Statute of Limitations

The Court must first decide whether Plaintiffs have timely brought their claims.  G.E. and Local 1 both argue that Plaintiffs filed this action after the statute of limitations expired.  A plaintiff has six months to file a hybrid § 301/fair-representation case.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154 (1983).  "Courts have generally held that the six-month limitations period begins to run when the employee knows or reasonably should know that the union has breached its duty of fair representation." *Becker v. Int'l Bhd. of Teamsters Loc. 120*, 742 F.3d 330, 333 (8th Cir. 2014) (quoting *Skyberg v. United Food & Commercial Workers Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993)).  A union breaches that duty when it "decide[s] not to pursue [a] grievance" that it should have pursued.  *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983); *see also Barlow v. Am. Nat'l Can Co.*, 173 F.3d 640, 642 (8th Cir. 1999) (first citing *Livingstone v. Schnuck Market, Inc.*, 950 F.2d 579, 583 (8th Cir. 1991); then citing *Tripp v. Angelica Corp.,* 921 F.2d 794, 795 (8th Cir. 1990); and then citing *Butler v. Local Union 823, Int'l Bhd. of Teamsters*, 514 F.2d 442, 449 (8th Cir. 1975)); *Scott v. United Auto.*, 242 F.3d 837, 840 (8th Cir. 2001) ("The key inquiry is what [plaintiff] knew or reasonably should have known about the union's decision not to pursue the grievance."); *Johnson v. Hussmann Corp.*, 805 F.2d 795, 797 (8th Cir. 1986) ("Appellant's § 301 claim accrued on . . . the date the union informed

4

him that it would not take his grievance to arbitration."); *Craft v. Auto., Petroleum & Allied Indus. Emps. Union, Loc. 618*, 754 F.2d 800, 803 (8th Cir. 1985).

G.E. and Local 1 argue that Plaintiffs' claim accrued on August 11, 2021, when Union Business Representative Robert Dussold told them he was "done" with them and that Local 1 would not be pursuing a grievance advancing their claim for legacy pay under the LOU.  Doc. 34 at pp. 7–8; Doc. 31 at pp. 11–12.  Dussold, true to his word, never filed a grievance based on Plaintiffs' LOU theory.  Doc 41 at ¶¶ 31–32.  And because Plaintiffs filed this case on March 9, 2022—6 months and 27 days after August 11, 2021—G.E. and Local 1 argue that Plaintiffs brought a time-barred case.  Doc. 34 at pp. 7–8; Doc. 31 at pp. 11–12.

Plaintiffs, for their part, do not dispute that Dussold told them he was "done" with them and their LOU complaint on August 11, 2021.  Doc. 39 at ¶ 23; Doc. 1 at ¶ 33.  They simply argue that they did not then *know* that Local 1 was declining to pursue their complaint.  Doc. 38 at p. 7; Doc. 40 at p. 11.  While Dussold apprised them of Local 1's position on the matter on August 11, 2021, he supposedly "continued to entertain Plaintiffs' requests" after that date.  Doc. 38 at p. 7 (citing Docs. 39-11, 39-13); Doc. 40 at p. 11 (citing Docs. 41-11, 41-13).  The evidence that Plaintiffs cite in support of that proposition, however, fails to raise a genuine issue of material fact as to Plaintiffs' knowledge of Local 1's decision not to file a grievance advancing the LOU theory.

Plaintiffs first cite a copy of a grievance that Dussold filed on August 24, 2021—nearly two weeks after Dussold told Plaintiffs he was "done" with them.  Doc. 38 at p. 7 (citing Doc. 39-11); Doc. 40 at p. 11 (citing Doc. 41-11).  This grievance, however, relates to Tony Chetta's promotion to the legacy rate; it does not relate to the mistaken date in the LOU.  Doc. 39-11; Doc. 41-11.  Indeed, Dussold listed the "Name of Grievant" as "All Employees at St. Louis

under the Competitive Wage at time of Tony's upgrade to Legacy 2016."  Doc. 39-11 at p. 2;

Doc. 41-11 at p. 2.  True, the grievance seeks a remedy similar to the remedy Plaintiffs sought on

the LOU theory—in Dussold's language, "[a]llow[ing] employees to change to legacy per 2016

and all wages and benefits of legacy rates since 2016."  Doc. 39-11 at p. 2; Doc. 41-11 at p. 2.

But the grievance takes issue with the fact that "[c]ompetitive wage rate employees [i.e., Chetta]

were allowed to advance to legacy rate while others were not."  Doc. 39-11 at p. 2; Doc. 41-11 at

p. 2.

 In other words, the grievance, on its face, stems from the perceived unfairness of

allowing some, but not all, competitive-rate employees to advance to the legacy rate in 2016; it

does not stem from the mistaken eligibility date in the 2021 LOU.  Local 1, as noted, proposed

and bargained for Chetta's elevation to the legacy rate after a legacy employee retired in 2016.

Doc. 39 at ¶ 25.  Accordingly, the substance of the grievance does not support the assertion, nor

allow any inference on the Court's part, that Local 1 continued entertaining Plaintiffs'

complaints about the LOU's eligibility date *after* August 11, 2021.

 To the extent that Plaintiffs seek to argue that the unfairness of Chetta's promotion bears

sufficient relation to the LOU issue such that Plaintiffs' claim accrued when Local 1 decided not

to pursue the "Chetta" grievance further after G.E. denied it, Doc. 38 at pp. 6–8, the Court rejects

that argument.  In *Becker v. International Brotherhood of Teamsters Local 120*, employees of

U.S. Foods lost their jobs when U.S. Foods closed its Eagan, Minnesota facility.  742 F.3d at

331–34.  Becker filed an unfair-labor-practices charge against his union with the NLRB in

December of 2008, alleging that his union mishandled the Facility Closure Agreement.  *Id.* at

332.  The NLRB dismissed the charge.  *Id.*  The union later filed a grievance against the

employer, alleging a breach of the collective-bargaining agreement.  *Id.*  The arbitrator denied

the grievance.  *Id.*  Becker brought a fair-representation claim against the union and argued that

the grievance-arbitration process tolled the limitations period of his fair-representation claim.  *Id.*

at 333.  The Eighth Circuit rejected his argument, holding that, although "[t]he two grievances

[were] connected factually in the sense that both center around the loss of appellants' jobs when

U.S. Foods closed the Eagan facility," *id.* at 334 n.3, "any grievance Becker had with the Union

concerning the Union's actions negotiating the Facility Closure Agreement would have remained

unresolved by the arbitration" relating to the collective-bargaining agreement, *id.* at 335.  The

issues, therefore, lacked sufficient connection for statute-of-limitations purposes, and the

grievance-arbitration process (involving the collective-bargaining agreement) did not toll

Becker's fair-representation claim (involving the union's handling of the Facility Closure

Agreement).  *Id.*

Just so here.  Although the LOU theory, and the "Chetta" theory that Local 1 eventually

pursued through a grievance, bear some factual connection insofar as Plaintiffs sought elevation

to the legacy rate on both theories, the theories are analytically distinct for statute-of-limitations

purposes.  As explained above, the LOU issue, involving a 2012 eligibility date in a LOU, has

nothing to do with Chetta's independently-bargained-for promotion to the legacy rate in 2016;

the resolution of one issue would not necessarily resolve the other.  And in their Complaint,

Plaintiffs clearly limited their fair-representation claim to Local 1's failure "to adequately

enforce Plaintiffs' rights . . . to receive the pay structure outlined in the ratified March 2021

LOU."  Doc. 1 at ¶ 50; *see also* Doc. 1 at ¶¶ 42–45, 47–52.  Resolution of the "Chetta" issue—

even if it had gone to arbitration—would not resolve the question of Plaintiffs' rights, if any,

under the LOU.  Accordingly, the grievance that Plaintiffs offer as evidence does not support

their assertion, nor allow any inference on the Court's part, that they lacked knowledge on

August 11, 2021, of Local 1's decision to refrain from filing a grievance raising the LOU theory. *See Becker*, 742 F.3d at 331–35.

In support of their assertion that Local 1 continued to entertain their LOU complaints after August 11, 2021, Plaintiffs also cite a letter addressed to Dussold and dated August 23, 2021. The letter came from an attorney representing Local 1 and bears the title "Local 1, IBEW and GE Appliance: Mutual Mistake in Letter of Understanding / Local Wage Agreement." Doc. 38 at p. 7 (citing Doc. 39-13); Doc. 40 at p. 11 (citing Doc. 41-13)). In that letter, the attorney advised Dussold that Local 1 and G.E. should "correct the [Letter of Understanding] to state the parties' mutual intent that the cut off [sic] date for the Legacy wage schedule is to remain in 2012." Doc. 39-13 at pp. 2–3; Doc. 41-13 at pp. 2–3. This evidence, too, fails to raise a genuine issue of material fact. Quite simply, the advice does not relate to Plaintiffs' asserted rights under the LOU. Rather, the letter assumes that the date in the LOU is a mutual mistake and focuses on the remedy for that mistake. The letter does not support the inference that Local 1 was still considering whether to file a *grievance* in pursuit of Plaintiffs' theory—and therefore does not support Plaintiffs' claim that Local 1 continued to "entertain" Plaintiffs' complaints about not receiving legacy pay under the LOU after August 11. Accordingly, Plaintiffs' evidence—the August 24 grievance and the attorney's letter—does not raise a genuine issue of material fact as to when Plaintiffs knew of Local 1's decision not to pursue a grievance on the LOU theory.

As the Eighth Circuit held in *Scott*, "[t]he key inquiry is what [Plaintiff] knew or reasonably should have known about the union's decision to pursue the grievance." 242 F.3d at 840. The undisputed material facts show that Plaintiffs "had sufficient facts to form the basis of [their] breach of duty of fair representation claim," at the latest, on August 11, 2021. *Id.* at 839. Plaintiffs' citations to the record do not create a genuine issue of fact as to when Plaintiffs had

the requisite knowledge—and the Court "is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 915 (8th Cir. 2007) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (per curiam)).  Plaintiffs had the requisite knowledge on August 11, 2021, nearly seven months before they filed this case on March 9, 2022.  Accordingly, Plaintiffs brought a time-barred breach-of-duty claim against Local 1 and, therefore, a time-barred § 301 claim against G.E.  *See Barlow*, 173 F.3d at 642 ("Because the union's breach of duty is a necessary element of a § 301 claim against the employer, the employee's claims against both typically accrue, for statute of limitations purposes," at the same time (citing *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 & n. 9 (8th Cir. 1983)).

## B.      Duty of Fair Representation

Even assuming Plaintiffs brought a timely case, they fail to raise a genuine issue of material fact as to Local 1's alleged breach of its duty of fair representation.  To prevail in a hybrid action, the employee must first prove the union breached its duty of fair representation.  *See id.*; *Moore v. United States Postal Serv.*, 992 F.2d 180, 181 (8th Cir. 1993).  "A union will be found to have breached its duty of fair representation only when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'"  *Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir. 1998) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

A union's conduct is arbitrary if, "considering all the circumstances at the time of the union's action or inaction, 'the union's behavior is so far outside a wide range of reasonableness as to be irrational.'"  *Smith v. United Parcel Service, Inc.*, 96 F.3d 1066, 1068–69 (8th Cir. 1996) (quoting *Beavers v. United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995)).  "Any substantive examination of a union's performance . . . must be highly deferential,

recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 78 (1991). "Mere negligence, poor judgment, or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." *Stevens v. Teamsters Local 600*, 794 F.2d 376, 378 (8th Cir. 1986) (citations omitted).  "A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit.  This is true even if a judge or jury later determines that the grievance is meritorious." *Cross v. United Auto Workers, Local 1762*, 450 F.3d 844, 847 (8th Cir. 2006) (first quoting *Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226, 1229 (8th Cir. 1983); and then citing *Vaca*, 386 U.S. at 192–93)).

Local 1 argues that it declined to pursue a grievance based on the LOU theory because, considering the relevant facts, it would have lacked merit.  Doc. 31 at pp. 10–11.  It argues that Plaintiffs have no evidence that it acted arbitrarily, discriminatorily, or in bad faith.  *Id.* Plaintiffs counter with the assertion that "Plaintiffs successfully made out a prima facie breach of contract case regarding the March 2021 LOU," Doc. 40 at p. 9, and that, therefore, Local 1 breached its duty by declining to pursue a grievance based on the LOU theory.  In support of their assertion, Plaintiffs only cite bits of evidence that bear little to no relation to the fair-representation claim at issue here.  For example, they assert that Local 1 "either ignores Plaintiffs' complaints, tells them to leave, or claims ignorance.  For years, Plaintiffs complained to [Local 1] representatives Dussold and Selvaggio about discrepancies with the [collective-bargaining agreement] and legacy pay rate." *Id.* at p. 10.

But the undisputed facts show that Local 1 considered Plaintiffs' complaints about the LOU before deciding that a grievance would lack merit.  For example, Plaintiffs admit that "Mr. Selvaggio inquired of Defendant GE on behalf of Plaintiffs over their not receiving the Legacy

Pay rate and discussed the issue with Mr. Dussold." Doc. 41 at ¶ 20. Specifically, in July of 2021, Local 1's Shop Steward Frank Selvaggio emailed G.E.'s agent, Tiana Chrisman, about their LOU complaint. Doc. 39 at ¶ 22 (citing Doc. 35-13 at p. 1). Selvaggio wrote, "I have talked to our business rep [Robert Dussold] at [Local 1] and was told this [date] was a typo error and this was not a part of the negotiations therefore there is nothing we can do about it. The employees continue to want to pursue this though." Doc. 35-13 at p. 1. They admit that they "continued to raise . . . their claim for the Legacy Pay rate" with Selvaggio and Dussold between April 2021 and August 2021, Doc. 41 at ¶ 22, and that Dussold eventually told Plaintiffs that he was "done" with them and that Local 1 would not be advancing a claim based on the LOU because Local 1 decided the eligibility date was a clerical error, *id.* at ¶ 24.

Local 1 entertained Plaintiffs' complaints, and discussed them both internally and with G.E., for months before finally deciding that a grievance based on the LOU theory would lack merit because the eligibility date was a mutual mistake. Plaintiffs have failed to come forward with any evidence supporting the inference that Local 1 acted arbitrarily, discriminatorily, or in bad faith with respect to its decision not to pursue a grievance based on the LOU theory. *See Moore*, 992 F.3d at 181 (affirming summary judgment in hybrid action because plaintiff failed to meet his "burden to show that the Union breached its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith"). Given the undisputed material facts, a reasonable jury could not find that that Local 1's "behavior [was] so far outside a wide range of reasonableness as to be irrational," *Smith*, 96 F.3d at 1068–69; *Liberty Lobby*, 477 U.S. at 248. Even considering the evidence in the light most favorable to Plaintiffs, *AgriStor Leasing*, 826 F.2d at 734, they fail to raise a genuine dispute as to any material fact.

## IV.   Conclusion

Accordingly, the Court grants both Defendant IBEW Local 1's [30] motion for summary judgment and Defendant Haier U.S. Appliance Solutions' [33] motion for summary judgment. A separate judgment accompanies this memorandum and order.

So Ordered this 21st day of July 2023.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE